## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| PHARMACEUTICAL CARE | : | |
| MANAGEMENT ASSOCIATION, | : | |
| | : | Civil Action No.: 03-CV-153-B-H |
| Plaintiff | : | |
| v. | : | |
| | : | |
| G. STEVEN ROWE, IN HIS OFFICIAL | : | |
| CAPACITY AS ATTORNEY GENERAL | : | |
| OF THE STATE OF MAINE, | : | |
| | : | |
| Defendant | : | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION FOR STAY

In its Motion for Stay, dated July 28, 2004, Defendant ("the State") argues as follows:

1. All activity in the District Court is automatically stayed while the State now appeals from the District Court's grant of a preliminary injunction;

2. Even if all activity is not automatically stayed, the District Court should in its discretion grant such a stay because:

   a. the decision by the First Circuit on the State's interlocutory appeal could resolve the suit as a whole;

   b. Plaintiff ("PCMA"[1]) will not be prejudiced because the preliminary injunction will remain in place pending resolution of the appeal; and

   c. the State has limited resources to go forward simultaneously with its interlocutory appeal and with discovery and final hearing on PCMA's Complaint..

The State's position lacks legal and factual merit at each level of its argument.

## BACKGROUND

**I.     The Injunction Rulings:  the State Chose Not to Appeal the Injunction, But Rather Tried Unsuccessfully to Amend It.**

PCMA filed its Complaint and Motion for Preliminary Injunction seeking to enjoin

enforcement of the "Unfair Prescription Drug Practices" Act ("UPDPA") almost one year ago,

---

[1] The Pharmaceutical Care Management Association.

1

on September 3, 2003.  The parties thoroughly briefed that Motion, including supplemental memoranda, and the Court held a three-hour hearing on November 6, 2003.  The State raised numerous arguments in opposition to the requested injunction, including that PCMA lacked standing to pursue the takings claim.  The Court rejected the State's arguments, and entered an Order preliminary enjoining enforcement of the UPDPA on March 9, 2004.

The State chose not to appeal from that Order.  Instead, on March 22, 2004, the State filed a Motion to Amend seeking only to narrow the scope of the injunction, claiming that the offending portions of the UPDPA were severable.  In an Order dated May 3, 2004, after noting that the State had preserved this severability issue just "barely," and in any event had failed to provide the Court with sufficient information to evaluate it, the Court remarked on the apparent inefficiency of attacking the scope of preliminary relief granted instead of proceeding with discovery and hearing on PCMA's request for final relief.  The Court nevertheless gave the State until May 21, 2004 to file a supplemental memorandum in support of the Motion to Amend, if it still wanted to pursue that course.  The State filed such a supplemental memorandum on May 21, but it did not focus solely on severability.  Rather, the State also argued, beyond the scope of its original Motion, that the preliminary injunction should be amended or even vacated because of legislative amendments to the UPDPA since the grant of the injunction.

The Court rejected the State's second effort to amend the preliminary injunction by Order dated July 7, 2004.  The parties were at that time, at the urging of the Court, engaged actively in discovery, exchange of expert witness information, and other conduct necessary to proceed to final disposition of PCMA's request for relief.  Then, on July 20, 2004, the State filed its Notice of Appeal, and asserted that all further proceedings in the District Court were stayed.

II.     **Discovery:   PCMA has Complied with All Rules and Deadlines, Filed Initial Disclosures, Answered Interrogatories, and Promptly Commenced Document Production after Entry of a Court-Approved Protective Order.**

The State makes much of PCMA's supposed non-cooperation in discovery, and argues that such past, not to mention predicted future, behavior supports the request for a stay.  In fact, it has been the State that has worked to maintain the appearance if not the reality of discovery difficulties, to mask either an inability or an unwillingness on its part to proceed with reasonable and relevant discovery on the timetable established by the Court.

At the urging of the Magistrate-Judge to "get going" with discovery, the State served its First Request for Production of Documents on May 6, 2004.  The State then served Rule 45 subpoenas on three of PCMA's members ("the PBMs"[2]) on May 19, 2004.  Counsel for PCMA, likewise at the urging of the Court, agreed to accept service of the subpoenas to the PBMs, all of which are located outside of Maine, and coordinated with counsel for each PBM regarding their individual responses to the subpoenas.   The State's discovery requests sought primarily disclosure of the information maintained by PCMA and the PBMs to constitute trade secrets.

On June 7, 2004, within the original period prescribed by Rule 34, PCMA responded to the State's Request for Production, and tendered a proposed protective order in a form entered by other courts in litigation involving PCMA's members and their trade secrets.   In the accompanying letter from its counsel, PCMA made clear that no confidential documents would be produced until a mutually satisfactory protective order was in place.  On June 10, 2004, apparently without even reviewing the form proposed by PCMA, the State sent back its own proposed generic protective order, which did not take into account considerations unique to this

---

[2] Pharmacy Benefit Managers.  The State originally served subpoenas on four PBMs -- Caremark, Advance PCS, Express Scripts, Inc. ("ESI"), and Medco Health Solutions, but due to the recent merger of Caremark and Advance PCS, there are now three PBMs subject to subpoena in this case.

case, for example that the confidential pricing information of one PBM cannot be shared with another PBM.  PCMA and the PBMs then spent the next month trying to craft a form of protective order that would satisfy the State, but still adequately protect the trade secrets at issue, until finally on July 9 counsel for PCMA (not the State) wrote to the Court seeking assistance to get an acceptable form of protective order entered.  Not surprisingly, the Court entered an order somewhere between where the parties had ended up after a month of discussions, but what was striking was the State's persistent resistance to compromise on the agreement, when such compromise could have expedited the actual production of confidential documents.

The State has taken a similarly uncompromising approach regarding production of documents.  The State represents in its Motion for Stay that it limited its document requests to "a small portion of relevant contracts and documents from only three of [PCMA's] members" by agreement, where in fact that limitation was by order of the Court, only after the State refused to agree to such a limitation and PCMA objected to broader discovery.  The State's initial position on discovery, on which it refused to compromise at all until after Court intervention, was that it needed to see all of the contracts and "related documents" from all eleven of PCMA's members and then to depose each and every one of those members in Augusta, Maine. [3]

Promptly after agreement to a protective order on July 16, the PBMs produced to the State copies of all contracts between them and their Maine customers, as well as their protocols

---

[3] As a threshold issue, it is perplexing why the State believes that scrutiny of all these documents is necessary to respond to PCMA's takings claim when:  (a) there appears to be no dispute as to the generic nature of the information at issue (details as to the drug price discounts obtained by the PBMs and passed on to the covered entities); (b) PCMA offered, very early in the proceedings, to provide more manageable, representative samples of the contracts without prejudice to the State seeking additional material; and (c) as this Court has ruled, only one association member's rights needs to be implicated for an association to have standing.  S*ee New Hampshire Motor Transport Ass'n. v. Rowe*, Civil No. 03-178-B-H, Order on Defendant's Motion for Partial Summary Judgment and Partial Motion to Dismiss, at 7, 11 (June 30, 2004).

and confidentiality provisions with respect to third party audits of performance under customer contracts.  When the State abruptly halted discovery on July 20, PCMA and the PBMs were negotiating diligently and in good faith with the State to find a mutually acceptable means of sample production of contracts with drug manufacturers and retail pharmacies, otherwise representing potentially thousands of pages of material.  In addition, PCMA timely and without any enlargement of time furnished its initial disclosures under Rule 26(a)(1) and answered interrogatories served by the State.  PCMA also, with a two week extension, served its expert witnesses designations.[4]

PCMA regrets the need to delve this deeply into discovery, but the State has at best painted an incomplete picture in support of its Motion for Stay.  Although the parties disagree about some of what has transpired, two indisputable points bear emphasis:  (1) that PCMA and the PBMs have complied fully with all rules and orders of this Court regarding discovery to date; and (2) that it is the State that is responsible to manage its own discovery within the deadline set by the Court (presently August 20, 2004).  Not only does the progress of discovery to date not support the State's request for a stay, it suggests an ulterior motive.

## DISCUSSION

I.  **An Appeal from the Grant of a Preliminary Injunction Does Not Stay Proceedings at the Trial Level.**

---

[4] The State not only mischaracterizes the responsiveness of PCMA and the PBMs, it also turns a blind eye to its own contribution to any discovery dilemma it faces.  The State's distaste for compromise, even as an icebreaker to get some discovery flowing, is described above.  Even more frustrating has been the path by which the State has typically staked out its discovery positions.  Counsel for PCMA has coordinated the involvement of counsel for each of the PBMs, who are and must be separately represented, on several telephone conferences with the State.  The pattern has been, after apparent progress with one attorney for the State during the call, he notes the need to check in with another attorney who was not available for the call.  Then, there is a subsequent communication by letter or e-mail retrenching to an earlier demand.

It is black letter law that trial court proceedings go forward during appeals relating to preliminary injunctions:

> Ordinarily an interlocutory injunction appeal under § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case. The effects of an interlocutory appeal are quite different in this respect from the effects of a final judgment appeal. Interlocutory injunction appeals would come at high cost if the trial court were required to suspend proceedings pending disposition of the appeal. The delay and disruption alone would be costly…. Continuing trial court proceedings, moreover, often pose little threat to orderly disposition of the appeal; ordinarily the scope of the appeal will be limited to consideration of the preliminary injunction decision itself, despite the power to reach out to other matters.

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3921.2 (3d ed. 1999) (footnote omitted). *See, e.g.*, *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996); *Railway Labor Execs. Assn. v. City of Galveston*, 898 F.2d 481, 481 n.1 (5th Cir. 1990); *West Pub. Co. v. Mead Data Central, Inc.*, 799 F.2d 1219, 1229 (8th Cir. 1986); *U.S. v. Price*, 688 F.2d 204, 215 (3d Cir. 1982) ("Finally, we noted that the district court erred in staying all proceedings during the pendency of this appeal. Although the filing of a notice of appeal ordinarily divests the district court of jurisdiction, in an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits.") (citations omitted); *Soc'y for Animal Rights, Inc. v. Schlesinger*, 512 F.2d 915, 918 (C.A. D.C. 1975); *Berne Corp. v. Gov't of the Virgin Islands*, 2000 WL 1689787, *1 & *1 n.1 (D. Virgin Islands 2000) ("it is well-established that an interlocutory injunction appeal … does not defeat the power of the trial court to proceed further with the case.") *Cf. Ex Parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906) (construing predecessor to 28 U.S.C. s. 1292(b)(1)) ("It was not intended that the cause as a whole should be transferred to the appellate court prior to the final decree. The case, except for the hearing on appeal from the interlocutory order, is to

proceed in the lower court as though no such appeal had been taken, unless otherwise specifically ordered.").[5]

## II.   The State Has No Good Reason for Staying Proceedings in the District Court.

### A.   The Pending Appeal is Unlikely to Resolve this Suit.

The State suggests that the appeal might foreclose the need for any further action by this Court because:  (1) if the First Circuit affirms the injunction based on ERISA preemption and finds no severability, then the case will be finally resolved in PCMA's favor; or (2) conversely, if the State prevails on its argument that PCMA lacks standing to assert the takings claim, then that claim will go away (even though the State has never filed a motion to dismiss that claim), eliminating the need for discovery because all discovery in this case relates to that claim.  There are many problems with this argument.

As a threshold matter, discovery is not ordinarily stayed because a party suggests that ultimately discovery will not be needed.  Otherwise, discovery would be stayed every time a party filed a motion to dismiss.

Second, the State misapprehends the scope of an appeal from a preliminary injunction. The basic reason why proceedings at the trial level are not automatically halted pending appeal of a preliminary injunction order is because the scope of such an appeal is narrow.  The issue on interlocutory appeal of a preliminary injunction ruling is whether the trial court abused its discretion in granting or rejecting preliminary relief under the "familiar four-part test."  *See Narragansett Indian Tribe v. Water Sewer Authority*, 334 F.2d 161 (1st Cir. 2003).  As a general

---

[5] The one case cited by the State to the contrary, *State of Maine v. Norton*, 148 F. Supp.2d 81, 82 (D. Me. 2001), involved an appeal from an unsuccessful motion to intervene, not a preliminary injunction, and even if rightly decided is not apposite.  The State's Motion for Stay and supporting Memorandum completely ignores the overwhelming authority establishing the absence of a stay pending an appeal from a preliminary injunction.

matter, therefore, the likelihood of this case as a whole being decided dispositively either way by the First Circuit in the course of ruling on the pending appeal is slim.[6]  This Court underscored the preliminary nature of the relief granted in its Order denying the State's Motion to Amend:

> "[P]erhaps at the end of the case, when final analysis and decision occur, the State will prevail (I make no predictions).  But the reasoning and scope of the *preliminary* injunction cannot be so easily avoided.  Judge Woodcock's preliminary conclusion that the UPDPA has an 'impermissible connection' with ERISA stands."

Order Denying Motion to Amend at 4-5 (emphasis in original).

The unlikelihood that the pending appeal will finally resolve this case is heightened here, given the particular posture in which the State is filing its appeal.  The State apparently wants to go back to square one and raise before the First Circuit every argument that it initially asserted against the initial grant of the injunction.  But the State did not file an appeal of Judge

---

[6] As the Ninth Circuit stated:

> Because our review of the district court's decision is generally limited to whether the district court abused its discretion, our disposition of an appeal from a preliminary injunction ordinarily will not dispose of the merits of the litigation. [citing *Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 753 (9th Cir.1982).]  "Because of the limited scope of our review of the law applied by the district court and because the fully developed factual record may be materially different from that initially before the district court, our disposition of appeals from most preliminary injunctions may provide little guidance as to the appropriate disposition on the merits." *Id.* [at 752.]

> In some cases, such appeals unnecessarily delay the litigation and waste judicial resources. *Id.*  In this case, for example, the government moved to stay discovery in the underlying litigation pending our disposition of this appeal.  To the extent that a desire to get an early glimpse of our view of the merits of the underlying legal issues in this litigation motivated this tactic, it was both misconceived and wasteful.  A preliminary injunction is, as its name implies, preliminary to the trial -- not to an appeal.  We believe that this case could have proceeded to trial, or to the summary judgment stage, in less time than it took the parties to submit these cases for appeal.  Had the parties pursued this course, they would have achieved a prompt resolution of the merits.  But the parties did not pursue this course; therefore, we are conducting our review on the basis of a limited record.  On the basis of this limited record and the status of the litigation, we may do no more than determine whether the district court abused its discretion in determining that serious legal questions were raised and that the balance of hardships tipped sharply in favor of the owners and crew.  Our resolution of these issues will not determine the merits of the underlying legal issues presented in this litigation, and will only temporarily affect the rights of the parties. *Id.*

*Caribbean Marine Services, Co. Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Woodcock's ruling.  Instead, it filed a Motion to Amend, and, therefore, would appear to be limited in its instant appeal to the propriety of this Court's ruling as to that particular Motion.  *See Hoult v. Hoult*, 373 F.3d 47, 2004 U.S. App. Lexis 12231, *12-14 (1ˢᵗ Cir. 2004).[7]  None of the issues that the State indicates it would like resolved on appeal appears ripe to provide a dispositive ruling from the First Circuit.

For example, on the ERISA preemption issue, the issue of severability does not appear particularly ripe for final resolution on interlocutory appeal.  Similarly, with respect to standing, even if the State could raise this issue on appeal although it was not a part of the Motion to Amend, the State's accusation of obstruction by PCMA in discovery is fact-laden and unsuitable for resolution in the interlocutory appeal on the present record.  PCMA doubts that the First Circuit will be eager to expand its normal, narrow preliminary injunction review to address the State's (unmeritorious) claims of discovery obstruction, particularly when there has been no ruling in the District Court on point.

## B.   PCMA Would Be Prejudiced by Further Delay.

This case has been pending for almost one full year.  Although Plaintiff has today the benefit of this Court's Order preliminarily enjoining enforcement of the UPDPA, pending final relief a PBM enters into any new contract in Maine without knowing whether, ultimately, its trade secrets will be protected.  Even more generally, the UPDPA puts fundamental burdens on PBMs that make it difficult to negotiate with their prospective customers until they know whether the Act will ultimately take effect.  Hence, PBMs conduct business in Maine at their peril, until final resolution of this suit.

---

[7]  "On appeal from the denial of a motion to modify an injunction, 'review does not extend to the propriety of the original order.'  16 Federal Practice & Procedure §  3924.2;  *see also Lichtenberg v. Besicorp Group, Inc.,* 204 F.3d 397, 401 (2d Cir.2000). . . .  If David wished to make such a challenge, he should have appealed directly from the May 30 order within the thirty-day appeals period."  *Id.* at *13-14.

**C.    The State is the Maker of its Own Difficulties.**

Finally, it should be noted that the State has been the master of its fate throughout these proceedings.  If the State had wanted swift resolution of an appeal of the injunction order, it could (and should) have appealed Judge Woodcock's order long ago.  Similarly, if the State had any qualms about any alleged PCMA-caused delays in discovery, its remedy would have been to seek relief from the trial court promptly, not to try to bring the case to a halt.   The State's claim that its resources are stretched is thus dubious from multiple perspectives.  Not only is it <u>the State</u>, with over 100 assistant attorney generals alone, but it has chosen when and how to litigate.

In any event, it is unclear as to how going forward with discovery, dispositive motions and final hearing could "hamper defendant's appellate efforts."  (Motion for Stay at 7.)  The Court of Appeals will issue a briefing schedule that will set the State's brief due certainly well after the August 20 discovery deadline in this case.  Even if that deadline is extended, the parties are still arguing over what items should be included in the record on appeal, which could enlarge any First Circuit briefing deadlines.  And the State can hardly argue that the briefing deadlines on appeal need expedition when it has waited so long to appeal the injunction in the first place.  Indeed, the whole question as to the scope of the appeal may need to be resolved preliminarily by the Court of Appeals.

Although the State suggests that a stay should be entered because it will be in effect for a "modest duration" while the appeal is pending, briefing in the case will take months and issuance of a final decision by the Court of Appeals could take place a year or more from now – nobody knows.  And during this period, PCMA and its members would be subject to the uncertainties noted above and, even upon a result from the appellate court affirming the denial of the motion to amend the preliminary injunction, the case could start up again just where it is today.

**CONCLUSION**

For the reasons set forth above, the State's motion should be denied. Discovery, dispositive motions, and final hearing should proceed pending the State's appeal.

Dated at Portland, Maine, this 10th day of August, 2004.

/s/ John J. Aromando
John J. Aromando
Catherine R. Connors
PIERCE ATWOOD
One Monument Square
Portland, ME  04101
(207) 791-1100
jaromando@pierceatwood.com

Paul J. Ondrasik, Jr.
Martin D. Schneiderman
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036-1795
(202) 429-3000

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2004, I electronically filed the Plaintiff's Opposition to Defendant's Motion for Stay with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Paul D. Stern, Assistant Attorney General
paul.d.stern@maine.gov

/s/ John J. Aromando
John J. Aromando
Catherine R. Connors
PIERCE ATWOOD
One Monument Square
Portland, ME  04101
(207) 791-1100
jaromando@pierceatwood.com

Paul J. Ondrasik, Jr.
Martin D. Schneiderman
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC  20036-1795
(202) 429-3000
*Attorneys for Plaintiff*